HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RONALD JONES, <br><br> Plaintiff, <br><br> v. <br><br> PIERCE COUNTY, et al., <br><br> Defendants. | CASE NO. C13-5280 RBL <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> DKT. #26 |

THIS MATTER is before the Court on Defendants' motion for summary judgment [Dkt. #26]. In 2011, The Pierce County Sheriff's Department used a police dog to arrest Jones on a warrant. Deputy Brett Karhu, the canine handler, thought that Jones was about to flee into a dark wooded area, so he released the dog without giving a warning. The dog apprehended Jones by biting him on the arm, which caused Jones significant pain and injuries. Jones is suing Deputy Karhu and Pierce County for the incident. He alleges that Karhu unnecessarily deployed the dog and then allowed it to bite him longer than necessary. He has brought 42 U.S.C. § 1983 excessive force claims and a number of state-law tort claims against Karhu and the County. Karhu and the County now move for summary judgment.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

## I. BACKGROUND

Jones is a drug user and has a long criminal history. In 2009, he was convicted under Washington State law of possessing methamphetamine. He was sentenced to six months and one day of confinement to be followed by one year of community custody. Because he was convicted of a non-violent, non-sexual offense, he was allowed to serve his confinement period at a community custody treatment facility.

At some point during his sentence, Jones stopped reporting to his supervising corrections officer, so a warrant was issued for his arrest for Escaping Community Custody (a felony). On February 5, 2011, the Sheriff's Department received a tip that Jones was staying at a house in Puyallup, Washington. Deputies James Maas and Jason Bray responded to the tip. They knew Jones from previous encounters and had arrested him multiple times for other offenses. The deputies claim that Jones has a reputation and history of running from officers, but they admit that they have never witnessed or heard reports of him being violent. Jones disputes that he has run from officers. In any event, the deputies requested backup from a K-9 unit because they thought that Jones might try to flee. Deputy Karhu and his dog, Oni, responded to their request.

When the three deputies met at the house, Maas and Bray told Karhu that Jones had run in the past, and they showed him a picture of Jones. The house's back yard opens up to a wooded area. The deputies thought that if Jones attempted to run, he would likely try to escape out the back door and flee into the woods. So, Karhu went to the back yard and knelt down next to Oni in an area concealed by a dark shadow 10 or 15 feet from the house's small back patio where he could not be seen.

As Karhu took his position in the back yard, Maas and Bray walked to the front door and knocked. As Karhu waited in the shadows with Oni, he saw Jones walk out the back door, just

as he had thought he might. According to Karhu, Jones came out onto the lit patio, looked around, and then started walking towards the grass. Karhu could see both of Jones's hands and that he was not holding any weapons. Nevertheless, he decided to send Oni without giving a warning. Karhu used his flashlight to illuminate Jones as Oni approached, which caused Jones to pause and look in Karhu's direction right before Oni bit him on the arm and took him to the ground.[1]

The parties dispute how long Oni continued to bite Jones. Karhu claims that he quickly followed Oni and gave the command to release his bite. According to Jones, Karhu allowed Oni to continue biting him well after he was secured. He claims that Karhu approached him and grabbed Oni's harness. When Karhu grabbed the harness, Oni eased his bite momentarily, but then bit down with renewed vigor. Only then did Karhu finally release Oni's bite. After Oni released him, Jones was arrested and taken to the hospital for medical care.

Jones is suing Karhu and the County for the incident. He has asserted § 1983 excessive force claims against Karhu for unnecessarily deploying Oni without first giving a warning and for allowing Oni to continue biting him well after he had been apprehended. He has also asserted state-law claims against Karhu for the tort of Outrage, assault, negligence, and negligent infliction of emotional distress. Against the County, Jones has asserted § 1983 *Monell* claims and a state-law claim under RCW 16.08.040, the Washington strict liability dog bite statute.

## II.   DISCUSSION

Deputy Karhu and the County move for summary judgment on all of Jones's claims. Summary judgment is appropriate when, viewing the facts in the light most favorable to the

---

[1] Jones claims that he went outside to see who was at the door. When he could not see who was there, he turned around to go back inside, which is when Karhu shined his flashlight on him and then he was bitten.

nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor."  *Triton Energy*, 68 F.3d at 1220.

    **A.**    **Claims Against Karhu**

        **1.**    **§ 1983 Excessive Force**

Karhu argues that his use of force was lawful because Jones was being arrested for a felony, he did not know if Jones was armed, it appeared to him that Jones was trying to flee, the situation would have been more dangerous if Jones had entered into the woods, and because the situation was rapidly evolving.  Jones contends that the use of such significant force was not warranted, especially because Karhu failed to give a warning before releasing Oni.

The Fourth Amendment protects an individual's right to be free from a police officer's use of excessive force.  To determine whether an officer used excessive force, the nature and quality of the intrusion must carefully be weighed against the countervailing governmental interest in the use of force.  *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir.2001) (citing

*Graham,* 490 U.S. at 396, 109 S.Ct. 1865).  When doing so, the circumstances must be judged objectively from the perspective of a reasonable officer on the scene.  *Id.*

When considering the reasonableness of the force used, important considerations include (1) the severity of the crime or situation that the officer was responding to; (2) whether the plaintiff posed an immediate threat to the safety of the officer or others; and (3) whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight.  *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865 (1989).  Another important consideration that is particularly relevant to this case is whether the officer gave a warning before using force that could cause serious injury.  *Deorle*, 272 F.3d at 1283–84.  The reasonableness of an officer's use of force is highly fact-dependent, so parties are rarely entitled to summary judgment on the merits of an excessive force claim.  *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

At the outset, the parties' differing accounts of how long it took Karhu to release Oni are enough to preclude summary judgment.  The two versions vary greatly.  If Karhu is believed, he released Oni quickly and without delay.  If that is true, then the duration of the bite was not a violation of Jones's rights.  But if Jones and his friends are believed, Karhu unnecessarily delayed releasing Oni and even repositioned him on Jones's arm.  If that is true, then a jury could certainly find that Karhu violated Jones's rights.

It is also not clear that Karhu could not have given a warning before releasing Oni or that the circumstances warranted such a significant use of force.  Because the circumstances must be evaluated from an objective officer's perspective in Karhu's position, even when the facts are viewed in the light most favorable to Jones, Karhu was likely justified in thinking that Jones was attempting to flee.  Deputies Maas and Bray called Karhu because they thought that Jones might flee.  Before approaching the house, Maas and Bray told Karhu specifically that Jones had a

history of running.  So, when Jones emerged from the house right after Maas and Bray knocked on the front door, it was reasonable for Karhu to assume that he was attempting to flee.

But even if Jones was attempting to flee, a jury could still find that it was unreasonable for Karhu to release Oni without first giving a warning.  Although Jones was wanted for a felony, the distinction between felonies and minor offenses can be minor and arbitrary.  *Tennessee v. Garner*, 471 U.S. 1, 14 (1985) ("[W]hile in earlier times the gulf between felonies and the minor offences was broad and deep, today the distinction is minor and often arbitrary.")  Jones was wanted for failing to report to probation.  He was allowed to serve his sentence for the underlying offense in the community presumably because he was not a threat to the public.  Given these circumstances, a reasonable jury could conclude that the severity of the crime and situation does not support Karhu's use of force.

A jury could also conclude that Jones did not pose a safety risk to the officers or others.  Simply put, Karhu and the other deputies have not articulated a reason for believing that Jones was a threat to their safety.  Deputies Maas and Bray had experience before with Jones before this incident, and neither of them had ever witnessed Jones being violent.  Karhu argues that it was dark and that he did not know if Jones was armed, so "the threat posed was real."  But he admits that he could see both of Jones's hands as he emerged from the house and that he was not holding any weapons.  Although officers are trained for their safety to assume that suspects are armed until they confirm otherwise, they cannot rely solely on that assumption when deciding how much force to use.  In the context of an officer's decision to use force, it cannot be that not knowing whether a suspect is armed is the same thing as the suspect actually being armed.  Objective factors must support an officer's concern for his safety or the safety of others to justify the intrusion of using force that may cause serious injury.  *Deorle*, 272 F.3d at 1281.

Lastly, and probably most importantly, a jury could find that in light of all the other circumstances, it was unreasonable for Karhu to release Oni without first warning Jones and giving him a chance to surrender. When feasible, an officer should warn the suspect or order him to halt before using force that may result in serious injury. *Id.* at 1284. Karhu argues that it was not feasible to give a warning because Jones might have been able to escape into the woods or arm himself with more time. But it is just as likely, if not more likely, that Jones would have heeded a warning, surrendered, and eliminated the need to use force entirely.

Karhu also argues that he had to make a split-second decision because of the rapidly evolving circumstances. But as Jones points out in his response, the events transpired exactly according to the deputies' plan. Maas and Bray requested Karhu's assistance because they thought that Jones might flee. Karhu positioned himself in the shadows in the back yard where he could not be seen precisely because he expected Jones to leave out the back door. Although the actual events may have happened quickly, Karhu cannot claim that he was caught unaware or that he did not have time to anticipate Jones's flight and think about how he would respond.

Ultimately, it is the jury's role to evaluate all of the circumstances and to determine whether it was reasonable for Karhu to release Oni without giving. Karhu's motion for summary judgment on Jones's § 1983 against him is **DENIED**.

    **2.**    **Outrage**

Karhu argues that Jones's Outrage claim should be dismissed because there is no evidence that would support a finding that his conduct was outrageous or extreme. Jones argues that the outrageousness of a defendant's conduct is usually a question of fact for a jury. To be liable for the tort of Outrage, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized society." *Grimsby v. Samson*, 85 Wash.2d 52, 59, 530 P.2d 291 (1975).

Here, the jury should decide whether Karhu's actions were so outrageous in character, and so extreme in degree, as to be intolerable in civilized society. Based on the record before the Court, it appears unlikely that Jones will prevail on this claim. However, a jury might find in his favor if it is convinced that Karhu purposely repositioned Oni on his arm to prolong the bite or otherwise demonstrated some ill-will or vindictiveness towards Jones. The motion for summary judgment on Jones's Outrage claim is **DENIED**.

### 3. Assault

Karhu argues that Jones's assault claim should be dismissed because the force that he used was reasonable and necessary. In Washington, police officers are liable for assault if they use excessive force. *Boyles v. City of Kennwick*, 62 Wn.App. 174, 176, 813 P.2d 178 (1991). Jones's assault claim thus rises and falls with his excessive force claim. Because the jury must decide whether Karhu used excessive force, his motion to dismiss the assault claim is **DENIED**.

### 4. Negligence and Negligent Infliction of Emotional Distress

In his response, Jones agrees to drop his negligence claims, so the Defendants' motion regarding those claims is **GRANTED**.

### B. Claims Against the County

### 1. § 1983 *Monell* Claims

The County contends that Jones has not identified a county policy or custom that can support his municipal liability claim. Jones claims that he has identified both a county policy and a county custom that can support his claim. First, he contends specifically that the County's canine deployment policy unconstitutionally omits a requirement that officers give a warning

before using a dog to apprehend a suspect.  Second, he contends generally that the County is deliberately indifferent to the likely constitutional violations that its use of canines causes.

In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991).  Under *Monell*, a plaintiff must allege (1) that a municipality employee violated a constitutional right; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) those customs or policies were the "moving force" behind the constitutional right violation. *Board of County Com'rs v. Brown*, 520 U.S. 397, 404 (1997).  A municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691.

Jones contends that the County's canine deployment policy was the moving force that caused Karhu to violate his rights because it does not require officers to give a warning before deploying a dog.  But the law does not require warnings in all situations.  Officers are required to give a warning only when feasible.  *Deorle*, 272 F.3d at 1284.  Because the feasibility of a warning is based on the circumstances, the decision to give a warning necessarily must be made by the officer on the scene.  Karhu stated in his declaration that he knew that he should give a warning if feasible, but that he determined that it was not feasible under the circumstances.  Thus, the County's policy could not have been the moving force behind any potential violation.  If Karhu violated Jones's rights, it was because he failed to properly evaluate the situation, not because the County's policy does not require a warning regardless of the circumstances.

In addition to arguing that the County's warning policy is facially deficient, Jones also contends that the County has generally failed to train and supervise its canine deputies. He claims that the County's lack of attention to data, details, and recommendations resulted in Karhu violating his rights. To support that theory, Jones submitted evidence that the County has not revised its procedures for deploying a dog since 1995, has never changed its training methods to comport with case law, does not keep relevant statistics about canine use, and has ignored U.S. Department of Justice recommendations regarding dog use.

Again, if any violation occurred it was because Karhu misdiagnosed the situation and improperly determined that a warning was not feasible. Jones has not produced any evidence that the County has failed to train its deputies when a warning is required. While the evidence that Jones has submitted might support a municipal liability claim in a different case, he has failed to show how the alleged deficiencies could have been the moving force that caused his injuries. Accordingly, the County's motion for summary judgment on Jones's municipal liability claims is **GRANTED**.

### 2.     Dog Bite Strict Liability

The County argues that Jones's strict liability claim under RCW 16.08.040 should be dismissed because Karhu's use of force was lawful. Washington federal courts have applied RCW § 16.08.040 to police dogs and held municipalities liable. *See Smith v. City of* Auburn, *et al.,* No. 04–cv–1829–RSM, 2006 WL 1419376, at 7 (W.D.Wash. May 19, 2006) (Martinez, J.) (applying RCW § 16.08.040 to police dogs); *Rogers v. City of Kennewick, et al.,* No. 04–cv–5028–EFS, 2007 WL 2055038, at *7 (E.D.Wash. July 13, 2007) (Shea, J.) (applying RCW § 16.08.040 to police dogs). As the County recognizes, the strict liability claim hinges on whether the use of Oni was lawful: "[Strict liability] does not apply to the *lawful* application of a police dog...." *Id.* (emphasis added). But whether Karhu's use of Oni was lawful is a question for the

jury. If the jury finds that Karhu's use of Oni was unlawful, the County is strictly liable; if lawful, the County is not liable. The strict-liability claim against the County thus depends on Jones's other claims and survives summary judgment. The County's motion to dismiss the strict-liability claim is **DENIED**.

### III.  CONCLUSION

The Defendants' motion for summary judgment [Dkt. #26] is **GRANTED IN PART AND DENIED IN PART**. Karhu is entitled to judgment as a matter of law on Jones's negligence claims, and the County is entitled to judgment as a matter of law on Jones's municipal liability claim. Questions of fact preclude summary judgment on all of Jones's other claims.

IT IS SO ORDERED.

Dated this 8th day of September, 2014.

*[signature: Ronald B. Leighton]*

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE